IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

ASHLEY BASS,

   Plaintiff,

vs.                                                                                      No. 1:23-cv-01215-STA-jay

BENTON BASS,

   Defendant.

## REPORT AND RECOMMENDATION

On October 10, 2023, Plaintiff Ashley Bass ("Plaintiff") filed this Complaint against her father, Defendant Benton Bass. ECF No. 1. The Complaint was accompanied by an Application to Proceed in District Court without Prepaying Fees or Costs. ECF No. 2. On October 11, 2023, the Court granted Plaintiff leave to proceed in forma pauperis (IFP). ECF No. 6. This case has been referred to the United States Magistrate Judge for management of all pretrial matters and for determination and/or report and recommendation as appropriate. Admin. Order 2013-05.

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court is required to conduct a screening of the Complaint because Plaintiff sought and received IFP status. Because the facts giving rise to Plaintiff's claims either fall beyond the statute of limitations or are implausible, the Magistrate Judge **RECOMMENDS DISMISSAL** of all Plaintiff's claims.

## PLAINTIFF'S COMPLAINT

Plaintiff raises a total of four claims against her biological father related to his alleged failure to comply with his obligations pursuant to a divorce decree.[1] ECF No. 1 at 8-12. According to Plaintiff, her biological mother filed for divorce from Defendant in December of 2007. ECF No. 1 at 1. "The divorce decree was appealed" and apparently two years after it was issued, "the appella[te] court agreed with the lower court" that the couple's postnuptial agreement "was a valid document and enforceable." ECF No. 1 at 2. According to Plaintiff, had the postnuptial agreement not been enforced, "[t]he assets in the mar[ital] estate would have gone back to a division of 50%/50% . . . ." ECF No. 1 at 2. Instead, the postnuptial agreement "gave real property rights or ownership of the jointly owned assets in the mar[ital] estate to both" Plaintiff and her "adult younger brother Bubba." ECF No. 1 at 4. However, Plaintiff alleges that Defendant has failed to abide by the postnuptial property allocations. ECF No. 1 at 2. The four claims raised by Plaintiff are: (1) bad faith, (2) defamation of character, (3) theft, and (4) failure to devise thirty-five acres of real property. ECF No. 1 at 8-12.

Plaintiff argues that "[p]roof of the bad faith [claim] is obvious because [her] Defendant Father Benton Bass has had continuous control over the assets that he said he would give to" Plaintiff but has failed to do so "in bad faith."[2] ECF No. 1 at 8. She goes on to state that Defendant "lied to" her and "took" what was hers and gave it to [her] brother or kept it for himself [] and continues to do so as of the date of the lawsuit." ECF No. 1 at 8. Plaintiff identifies several pieces of property. The first is a marina; she states that Defendant "kept [her] marina and used it for his

2

---

[1] While the total number is only four, Plaintiff mis-numbers the final count as "Count 5." ECF No. 1 at 12.

[2] Plaintiff also argues that "in the divorce trial, [her] defendant father's lawyers were in bad faith because they argued a legal position that they were aware . . . is false." ECF No. 1 at 8. However, Plaintiff did not name these attorneys as Defendants; as such, the Court will not consider any claims against them.

own profit and cash flow and then sold the marina at a profit at [her] expense." ECF No. 1 at 9. She also notes she is owed "65 pieces" of "a sterling silver dinner ware set" that apparently came from England. ECF No. 1 at 11. Finally, she identifies "35 acres" of real property at an undisclosed location that she should have received title to. ECF No. 1 at 12.

As to the defamation of character claim, Plaintiff alleges that in a deposition, her father stated under oath that Plaintiff was a "work in progress." ECF No. 1 at 9. Plaintiff argues that a court "or any other person would assume that there is something wrong with my character" based on such a statement. ECF No. 1 at 9. Plaintiff goes on in the Complaint to refute being a "work in progress" by providing some of her employment history. ECF No. 1 at 10.[3]

As to Plaintiff's claim of theft, she includes one paragraph that alleges Defendant kept her grandmother's "sterling silver dinner[ware] set with 65 pieces from England . . . ." ECF No. 1 at 11. Plaintiff argues that the "postnuptial clearly indicated [she] was to receive the family silver on [her] 36[th] birthday." ECF No. 1 at 12. However, Plaintiff is now thirty-nine years old and has "never received it." ECF No. 1 at 12. Plaintiff argues that Defendant at one point said he was "holding it for [h]er," but he has failed to deliver the personal property. ECF No. 1 at 11.

Plaintiff does not label the final "count" with a particular cause of action. She simply states that her brother received "35 acres" of real property. ECF No. 1 at 12. However, she "never received title to the other 35 acres that was part of the mar[ital] estate which was required to be given to [Plaintiff] by the [p]ostnuptial which is now enforced." ECF No. 1 at 12.

---

3

[3] Plaintiff then turns the tables and argues that her father himself is a "work in progress" because he allegedly suffers from a drinking problem. ECF No. 1 at 10. She then states that he partook in "suspicious methods of banking business" that "would invite an[] IRS audit." ECF No. 1 at 10-11. Plaintiff attached "two spread sheets [sic] from bank statements" that she alleges show "large amounts of wire transfers of money . . . ." ECF No. 1 at 11. Because these facts do not appear to support any of the claims that Plaintiff has raised, the Court will not consider them.

Plaintiff requests $500,000 "or the net operating income . . . from one or more of the marinas for the prior 15 years." ECF No. 1 at 13. She also requests a "house and or the same fruits and benefits [her] younger brother Bubba has received with good faith from the Defendant Benton Bass together with attorney fees and court costs." ECF No. 1 at 13. She also appears to request an unidentified sum of money for "severe mental anguish" caused by her father's bad faith. ECF No. 1 at 13. Finally, Plaintiff requests "title to the Lakeview marina or others . . . ." ECF No. 1 at 14.

## SCREENING STANDARDS

The Court is required to screen in forma pauperis complaints and to dismiss any complaint, or any portion thereof, if the action—

(i)   is frivolous or malicious;

(ii)  fails to state a claim on which relief may be granted; or

(iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

In assessing whether the Complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 667-79, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009), and in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57, 127 S. Ct. 1955, 1964-66, 167 L. Ed. 2d 929 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681, 129 S. Ct. at 1951) (alteration in original). "[P]leadings that are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 681, 129 S. Ct. at 1950; *see also Twombly*, 550 U.S. at 555 n.3, 127 S. Ct. at 1964-65

n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"Pro se complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). Pro se litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), *reh'g denied* (Jan. 19, 1990); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Secretary of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231, 124 S. Ct. 2441, 2446, 159 L. Ed. 2d 338 (2004) ("District judges have no obligation to act as counsel or paralegal to pro se litigants.").

Under § 1915(e)(2)(B), the Court has the discretion to refuse to accept allegations in a complaint that are "clearly baseless," a term encompassing claims that may be described as "fanciful, fantastic, delusional, wholly incredible, or irrational." *Bumpas v. Corr. Corp. of America,* No. 3:10–1055, 2011 WL 3841674, at *8 (M.D. Tenn. Aug. 30, 2011) (citing *Denton v. Hernandez,* 504 U.S. 25, 32–33 (1992)). Furthermore, "a district court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal

Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn,* 183 F.3d 477, 479 (6th Cir.1999).

Finally, in order to proceed, Plaintiff's claims must be timely brought before the court. Because Plaintiff's claims are all state-law claims, state law limitations period apply. *Hodge v. Service Machine Co.*, 438 F.2d 347, 348 (6th Cir. 1971). Federal courts sitting in diversity apply the law of the forum state as well as it relates to when a cause of action accrues. *Richard v. Ray*, 290 F.3d 810, 812 (6th Cir. 2002).

## ANALYSIS

### A. Subject Matter Jurisdiction

The Court notes at the outset that Plaintiff has brought this case pursuant to the Court's diversity jurisdiction. ECF No.1 at 1. Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994). Litigants must establish that the court has subject matter jurisdiction over their claims through federal question jurisdiction, diversity jurisdiction, or supplemental jurisdiction. 28 U.S.C. § 1331–1332; 28 U.S.C. § 1367. Diversity jurisdiction is present when there is "complete diversity [of citizenship] between all plaintiffs and all defendants" and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332; *Lincoln Prop. Co. v. Roche,* 546 U.S. 81, 84 (2005). A party's citizenship is determined by their domicile. *Stifel v. Hopkins*, 477 F.2d 1116, 11260 (6th Cir. 1973). This suit is within the Court's diversity jurisdiction because Plaintiff is domiciled in Tennessee, Defendant is apparently domiciled in Arkansas, and the amount in controversy exceeds the $75,000 threshold. ECF No. 1 at 1.

### B. Bad Faith

Plaintiff's first claim is titled as "bad faith." ECF No 1 at 8. However, there is no cause of

6

action under Tennessee law for a standalone claim of bad faith. *Jones v. LeMoyne-Owen College*, 308 S.W.3d 894, 908 (Tenn. Ct. App. 2009). While the Court is aware that there are potential ways Plaintiff could have pled bad faith in conjunction with some type of breach of contract claim, the Court will not embark upon such analysis on Plaintiff's behalf. The Court is not Plaintiff's counsel and can only analyze those facts and arguments presented before it. Simply put, there is no standalone claim of bad faith. *Jones*, 308 S.W.3d at 908. To the extent Plaintiff meant to argue for a breach of contract, she failed to plead any facts to establish the existence of such a contract, to include the necessary elements as it relates to a contract to devise real property.[4]

To the best of the Court's ability, Plaintiff is arguing that there is a legal cause of action to be raised against Defendant because he has "ill will against" Plaintiff. ECF No. 1 at 8. She argues this ill will is best exemplified in Defendants failure to devise real property to Plaintiff despite the fact "he said he would give" certain property to Plaintiff. ECF No. 1 at 8. The Court simply cannot

7

---

[4] The Court notes that the "essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006) (quoting *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). Although the Court could infer a breach based on Plaintiff's assertion of non-performance, as well as damages, the Court cannot infer the existence of an enforceable contract. One key element in establishing a contract is "valuable consideration," which is "either a benefit to the part promising or a prejudice or trouble to the party to whom the promise is made." *Sutton v. First Nat. Bank of Crossville*, 620 S.W.2d 526, 531 (Tenn. Ct. App. 1981). Plaintiff has described what is more akin to a gift. She has included no mention of any type of consideration necessary to establish the existence of an enforceable contract.

Additionally, "[p]rivity of contract is an essential element of a claim for breach of contract under Tennessee law." *Braden v. Engineered Paint Applications, LLC*, No. 1:17-cv-1063, 2017 U.S. Dist. LEXIS 125718, at *24 (W.D. Tenn Aug. 9, 2017) (citing *Tipton v. Sparta Water Co.*, 57 S.W.2d 793, 795 (Tenn. 1933)). Most of the terms Plaintiff mentions regarding any agreement appear to have been found in the postnuptial agreement made between Defendant and her biological mother. Plaintiff was, therefore, not a party to that contract. It is possible for a third party to enforce the terms of a contract. *Burke v. Regions Bank*, 2013 U.S. Dist. LEXIS 5826, *7-8 (W.D. Tenn. Jan. 15, 2013) (citing *Owner-Operator Indep. Drivers Ass'n v. Concord EFS*, 59 S.W.3d 63, 68 (Tenn. 2001)). However, Plaintiff failed to provide any facts upon which the Court could evaluate whether she is an intended beneficiary to the postnuptial agreement. As such, the Court cannot meaningfully evaluate whether Plaintiff could even enforce the terms of the postnuptial agreement.

Moreover, Plaintiffs Complaint mentions two parcels of real property: a marina and 35 acres of land. ECF No. 1 at 8-9, 12. Under Tennessee law, the "conveyance of real property" requires "some memorandum or note thereof . . . in writing" in order to enforce the conveyance. *Waddle v. Elrod*, 367 S.W.3d 217, 222 (Tenn. 2012); TENN. CODE ANN. § 29-2-101(a)(4). Plaintiff included no mention of a writing that would evidence the agreement to convey a parcel of land or a marina to Plaintiff by Defendant.

make Plaintiff's legal arguments for her, nor can the Court imagine facts into the Complaint on Plaintiff's behalf. There is no cause of action of bad faith, alone, under Tennessee law. To the extent Plaintiff intended to establish the existence of a contract in order to raise a bad faith argument under contract law, she failed to plead sufficient facts to establish the existence of a contract. As such, the Court RECOMMENDS DISMISSING Plaintiff's bad faith count for failure to state a plausible claim.

### C. Defamation

Plaintiff's next cause of action is for defamation. The Court finds that Plaintiff has failed to state a plausible claim, and she failed to bring her claim within the statute of limitations. As such, the undersigned RECOMMENDS DISMISSING Plaintiff's defamation claim.

There are two types of defamation in Tennessee: slander and libel. *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 50 (Tenn. Ct. App. 2013). "Slander is 'the speaking of base and defamatory words which tend to prejudice another in his reputation, office, trade, business, or means of livelihood.'" *Brown*, 428 S.W.3d at 50 (quoting *Little Stores v. Isenberg*, 172 S.W.2d 13, 16 (Tenn. Ct. App. 1943)). Because Plaintiff has alleged she suffered defamation through the spoken words of Defendant, the Court will proceed in analyzing this claim under Tennessee's laws related to slander.

In order to state a claim for defamation, "a plaintiff must prove that: (1) a party published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Id*. (citing *Hibdon v. Grabowski*, 195 S..3d 48, 58 (Tenn. Ct. App. 2005)).

A plaintiff must also "prove that the defamation resulted in injury to the person's character and reputation." *Id*. (citing *Quality Auto Parts Co. v. Bluff City Buick*, 876 S.W.2d 818, 820 (Tenn.

8

1994)). This requires more than a presumption of damages; "'actual damages must be sustained and proved.'" *Id*. (quoting *Davis v. Tennessean*, 83 S.W.2d 125, 128 (Tenn. Ct. App. 2001)). Such damage must be shown by "any material evidence of impairment of reputation and standing in the community, personal humiliation, or mental anguish and suffering." *Id*. (quoting *Murray v. Lineberry*, 69 S.W.3d 560, 564 (Tenn. Ct. App. 2001)). Additionally, "[w]hile there is . . . no categorical bar to premising liability on a statement with an opinion component, the opinion-based nature of a statement does render that statement less likely to have a defamatory impact." *Mucerino v. Martin*, 20201 U.S. Dist. LEXIS 228340, at *25 (M.D. Tenn. Nov. 30, 2021) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990)).

The Court finds that Plaintiff has failed to state a plausible claim under Rule 12(b)(6) for defamation / slander. First, the Court notes that the statement Plaintiff takes issue with is one of opinion. Defendant's view that Plaintiff is or was a "work in progress" is one of his own perception and opinion. Such an opinion statement that is vague and nebulous in meaning makes it difficult to show whether the statement is true or false. More important, the Court finds that Plaintiff has failed to show that this statement resulted in actual damages to her character or reputation. Plaintiff argues that this statement would cause a court or "any other person" to "assume that there is something wrong with [her] character." ECF No. 1 at 9. However, Plaintiff failed to show that the statement did *in fact* lead a court or another person to make such an assumption. The mere possibility of a third party assuming the worst about Plaintiff is insufficient to establish slander.

Plaintiff does later state that she suffered from "severe mental anguish" and physical illness. ECF No. 1 at 13. However, she states that those issues were "caused by the Bad Faith of my Defendant Father Benton Bass." ECF No. 1 at 13. Plaintiff raises the issue of "Bad Faith" as a separate count. She does not state that she suffered these ailments as a result of her father's alleged

9

slander. As such, Plaintiff failed to make a showing of "material evidence of . . . mental anguish and suffering." *Brown*, 428 S.W.3d at 50. Because Plaintiff completely failed to establish any damages related to Defendant's alleged statement, the Court RECOMMENDS DISMISSING this claim under the Rule 12(b)(6) plausibility standard.

However, even if Plaintiff had stated a plausible defamation cause of action, Plaintiff failed to bring that claim within the limitations period. In Tennessee, the statute of limitations for slanderous defamation is "six (6) months after the words are uttered." TENN. CODE ANN. § 28-3-103. Although Plaintiff does not give the precise date that Defendant allegedly made the slanderous statement, the Court can infer that this lawsuit was filed well after the six-month statute of limitations period. Plaintiff states in her Complaint that these divorce proceedings began in 2007, were appealed, and "after two years" were finally ruled upon by the appropriate appellate court. ECF No. 1 at 1-2. The alleged slander took place during a "deposition about the assets that were to be given to" Plaintiff. ECF No. 1 at 9.

Plaintiff included as an Exhibit an excerpt from the Arkansas appellate court hearing the case. That filing shows that Plaintiff's mother appealed "from a divorce decree filed on January 24, 2014," and that several appeals had previously been dismissed—as late as February 13, 2019. ECF No. 1 at 3-4.

The Court notes that whatever depositions took place regarding what Plaintiff may or may not receive as part of a divorce proceeding must have taken place prior to the final divorce decree entered on January 24, 2014. Given that Plaintiff did not file the instant lawsuit until October 10, 2023, she is well outside of the six-month statute of limitations period. ECF No. 1. Plaintiff argues that her claims are "not barred by the statute of limitations because the time started to accrue when the appella[te] court affirmed the divorce decree and [the] postnuptial [agreement was] to be

10

enforced." ECF No. 1 at 2. Plaintiff's argument is simply incorrect. The Tennessee statute is perfectly clear: Plaintiff had six months from the moment "the words [were] uttered" to file suit. TENN. CODE ANN. § 28-3-103. As such, Plaintiff's defamation claim is barred by the statute of limitations.

### D. Theft

Plaintiff's next claim is for theft. ECF No. 1 at 11-12. However, there is no civil cause of action for theft. Instead, the Court will consider Plaintiff's claim to be for civil conversion as the facts alleged state that Defendant has not produced sterling silver pieces owed to Plaintiff. ECF No. 1 at 11-12.

"Conversion is the appropriation of another's property to one's own use and benefit, by the exercise of dominion over the property, in defiance of the owner's right to the property." *Ralston v. Hobbs*, 306 S.W.3d 213, 221 (Tenn. Ct. App. 2009). The conversion cause of action occurs "when the alleged wrongdoer exercises dominion over the [property] in 'defiance of the owner's rights.'" *Ralston*, 306 S.W.3d at 221 (quoting *Hanna v. Sheflin*, 275 S.W.3d 423, 427 (Ten. Ct. App. 2008)). This "cause of action accrues 'when the plaintiff knew or reasonably should have known that a cause of action existed.'" *Id*. at 223 (quoting *Hanna*, 275 S.W.3d at 427). Once the cause of action accrues, the plaintiff has three years to commence a civil suit. TENN. CODE ANN. § 28-3-105(2).

Taking Plaintiff's Complaint at face value, it does appear as though she had *some* property interest in a set of sterling silver pieces. ECF No. 1 at 11. She states that the "postnuptial clearly indicated [Plaintiff] was to receive the family silver on [her] 36[th] birthday." ECF No. 1 at 11-12.

While the bare bones of these facts may leave the Court questioning the extent of Plaintiff's property interest, the facts leave no doubt that Plaintiff failed to timely bring her claim. Plaintiff

11

states that she was meant to "receive the family silver on [her] 36[th] birthday." ECF No. 1 at 12. Therefore, it appears that the date Defendant committed an act of conversion (keeping the sterling silver instead of delivering it to Plaintiff) was Plaintiff's 36th birthday. There is nothing to indicate Plaintiff was unaware of her property interest in the silver at the time of her birthday. To the contrary, it appears Plaintiff has been aware of the terms of the postnuptial agreement for some time. ECF No. 1 at 4 (stating that the "actions of my [D]efendant Father over the prior 15 years were in bad faith.").

However, at the time Plaintiff filed the Complaint, she was "39 years old." ECF No. 1 at 12. As such, she waited more than three years to bring this cause of action. Therefore, it is barred by the statute of limitations. Because it is barred by the statute of limitations, the undersigned RECOMMENDS DISMISSING Plaintiff's civil conversion claim.

### E. Failure to Devise

For the same reasons outlined above under the bad faith analysis, the Court likewise RECOMMENDS DISMISSING Plaintiff's claim for failure to devise thirty-five acres of land. Again, Plaintiff's claim sounds in breach of contract. However, she failed to plead sufficient facts to establish the existence of an enforceable contract, particularly as it relates to real property. As such, she has failed to meet the Rule 12(b)(6) plausibility threshold and her claim should be DISMISSED.

### CONCLUSION

For all these reasons, the Magistrate Judge recommends that this Court **DISMISS** Plaintiff's Complaint in its entirety, pursuant to 28 U.S.C. § 1915(e)(2) and Federal Rule of Civil Procedure 12(b)(1). Respectfully submitted this 25th day of January, 2024.

> **s/Jon A. York**
> UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT AND RECOMMENDATION MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT AND RECOMMENDATION. 28 U.S.C. § 636(b)(1). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER AND/OR FORFEITURE OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**