IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| ASHLEY BASS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 1:23-cv-1215-STA-jay |
| ) | |
| BENTON BASS, ) | |
| ) | |
| Defendant. ) | |

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**ORDER OF DISMISSAL**
**ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH**
**ORDER ON APPELLATE FILING FEE**

On January 25, 2024, the United States Magistrate Judge issued a report and recommendation (ECF No. 7), screening Plaintiff Ashley Bass' Pro Se Complaint and recommending the dismissal of the case for failure to state a plausible claim for relief. Plaintiff has filed timely objections to the report (ECF No. 8). For the reasons set forth below, the Court **ADOPTS** the report and recommendation and **DISMISSES** some claims for lack of subject-matter jurisdiction and the rest for failure to state a claim.

## BACKGROUND

Plaintiff Ashley Bass initiated this case by filing a Pro Se Complaint (ECF No. 1) on October 10, 2023. The Pro Se Complaint names Benton Bass, Plaintiff's biological father, as the Defendant. The Magistrate Judge has provided in his report the following summary of Plaintiff's allegations, to which Plaintiff has not raised any objection. Therefore, the Court adopts that portion of the report as the findings of the Court.

Plaintiff alleges that her father has failed to comply with provisions of a postnuptial

1

agreement by which Plaintiff was to receive certain real and personal property.  Pro Se Compl. 8-12 (ECF No. 1).  According to Plaintiff, her biological mother filed for divorce from Defendant in December 2007.  *Id*. at 1.  In the course of the divorce proceedings, a trial court held and an appellate court affirmed that the couple's postnuptial agreement was valid and enforceable. *Id*. at 2. The postnuptial agreement "gave real property rights or ownership of the jointly owned assets in the mar[ital] estate to" Plaintiff and her "adult younger brother Bubba." *Id*. at 4.  Plaintiff now alleges that Defendant has failed to comply with the property allocations in the postnuptial.  *Id*. at 2.

The Pro Se Complaint alleges four causes of action: (1) bad faith, (2) defamation of character, (3) theft, and (4) failure to devise thirty-five acres of real property.  *Id*. at 8-12.[1]  First, Plaintiff alleges that her father has acted in bad faith by breaching his agreement to devise Plaintiff the property to which she believes the postnuptial entitles her.  *Id*. at 8.[2]  Plaintiff alleges that Defendant lied to her and has either kept the property for himself or given it to Plaintiff's brother. *Id*. at 8. The Pro Se Complaint alleges one of the properties is a marina. *Id*. at 9.  Plaintiff also alleges she is owed an imported, 65-piece sterling silver dinnerware set and 35 acres of real property in an undisclosed location. *Id*. at 11-12.

Next, Plaintiff alleges that Defendant is liable for defamation of character.  Plaintiff's claim is based on a comment her father allegedly made about her during a deposition in the divorce case.  According to Plaintiff, her father described her as a "work in progress," which Plaintiff believes

---

[1] The Pro Se Complaint numbers each claim as a "count."  While the total number of claims is four, Plaintiff actually mis-numbered the final count as "Count 5."  Pro Se Complaint 12.

[2] Plaintiff also alleges that her father's attorneys made certain legal arguments in bad faith during the course of the divorce proceedings.  *Id*. at 8. However, the Pro Se Complaint does not name these attorneys as Defendants; as such, the Court will not consider any claims against them.

2

was an attack on her character. *Id*. at 9. The Pro Se Complaint denies the truth of the statement and cites Plaintiff's employment history working for her father. *Id*. at 10.³ As part of Count 3, Plaintiff alleges that her father is liable for theft because he has retained possession of Plaintiff's grandmother's sterling silver, even though under the postnuptial agreement Plaintiff was to receive the silver on her 36th birthday. *Id*. at 11-12. Plaintiff alleges she is now 39 years old and has yet to receive the silver. Plaintiff does not label the final "count" with a particular cause of action. The Pro Se Complaint simply states that Plaintiff's brother received 35 acres of real property and Plaintiff was supposed to receive another 35 acres, again under the terms of their parents' postnuptial agreement. *Id*. at 12.

The Pro Se Complaint seeks damages in the amount of $500,000.00 "or the net operating income . . . from one or more of the marinas for the prior 15 years." *Id*. at 13. Plaintiff also demands a house or other property equal in value to the property her brother has received as well as title to Lakeview Marina "or others." *Id*. at 13-14. Plaintiff also seeks compensatory damages for severe mental anguish. *Id*. at 14.

## JURISDICTION

"Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Akno 1010 Mkt. Street St. Louis Mo. LLC v. Pourtaghi*, 43 F.4th 624, 626 (6th Cir. 2022) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 94, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010)). The Court has jurisdiction over Plaintiff's claims against Defendant by virtue of the amount in controversy and the parties' diversity of citizenship under 28 U.S.C. §1332(a). Plaintiff's claims, nevertheless, arise out of a contractual property

---

³ The Pro Se Complaint contains allegations about the character of Plaintiff's father. None of the facts, however, add any support to Plaintiff's own claims for relief. Because these facts do not appear to support any of the claims that Plaintiff has raised, the Court will not consider them.

3

settlement between her parents as part of their divorce proceedings. The domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees" based on the text of the Judiciary Act of 1789 and in recognition of "the special proficiency developed by state tribunals over the past century and a half in handling issues that arise in the granting of such decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703-04, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). The exception applies to "a narrow range of domestic relations issues." *Id*. at 701.

The United States Court of Appeals for the Sixth Circuit has held that "[w]hen analyzing the applicability of the domestic-relations exception," courts should "focus on the remedy that the plaintiff seeks." *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 797 (6th Cir. 2015). In other words, "[d]oes the plaintiff seek an issuance or modification or enforcement of a divorce, alimony, or child-custody decree?" *Id*. For example, the Sixth Circuit has held that the domestic relations exception applied where one former spouse sued the other former spouse for breach of a separation agreement to sell real property. *McLaughlin v. Cotner*, 193 F.3d 410, 413 (6th Cir. 1999). In *McLaughlin*, the Court of Appeals distinguished *Ankenbrandt* and concluded the domestic relations exception applied because the contract at issue was "a separation agreement that was incorporated in the divorce decree." *Id.* at 414. The rights of the plaintiff in *McLaughlin* were not merely contractual rights under state law but rights based on the divorce decree itself. *Id*. "*McLaughlin* stands for the uncontroversial proposition that a plaintiff may not artfully cast a suit seeking to modify or interpret the terms of a divorce, alimony, or child-custody decree as a state-law contract or tort claim in order to access the federal courts." *Chevalier*, 803 F.3d at 795–96.

The Court holds that the domestic relations exception applies to Plaintiff's claims for the direct transfer of any real or personal property which the postnuptial agreement allegedly entitled

Plaintiff to receive after her parents' divorce. The Pro Se Complaint refers extensively to a postnuptial agreement between Plaintiff's parents and implies that Plaintiff was an intended third-party beneficiary of the agreement. Concerning the transfer of real property, Plaintiff alleges in Count 5 of her Pro Se Complaint that her brother received 35 acres from their father but that Plaintiff "never received title to the other 35 acres that was part of the marital estate which was required to be given to me by the Postnuptial . . . ." Pro Se Compl. 12. Plaintiff also seeks the transfer of marina property. Even so, Plaintiff's pleading denies that she is alleging breach of the postnuptial or seeking specific performance of the contract. *Id*. 5 ("It should be noted this is not a suite [sic] for specific performance or breach of contract."). Be that as it may, Plaintiff essentially seeks specific performance of the postnuptial's disposition of the real property that was allegedly intended for Plaintiff. Specific performance of a contract is an equitable remedy, *Hillard v. Franklin*, 41 S.W.3d 106, 111 (Tenn. Ct. App. 2000), particularly well-suited for "contracts for the conveyance of real property." *St. George Holdings LLC v. Hutcherson*, 632 S.W.3d 515, 529 (Tenn. Ct. App. 2020). Because the postnuptial is part of a final divorce decree, the remedy sought by Plaintiff, the transfer of the 35 acres and a marina property, is simply the "enforcement of a divorce . . . decree." *Chevalier*, 803 F.3d at 797. The Court concludes then that it lacks subject-matter jurisdiction over Plaintiff's claim for the specific performance of this aspect of the postnuptial.

Likewise, Plaintiff's conversion claim seeking the return of her grandmother's silver is simply a request for the enforcement of the postnuptial. The silver was addressed in the postnuptial as part of the division of property between Plaintiff's parents who agreed that Plaintiff would receive the silver at a later time. The Pro Se Complaint alleges that Plaintiff's grandmother owned a 65-piece set of imported silverware, which Plaintiff's father was "holding" for Plaintiff.

5

According to Plaintiff, Defendant agreed as part of the postnuptial to turn the silver over to Plaintiff on her 36th birthday.[4]  For the reasons the Court has already explained, the Court lacks subject-matter jurisdiction over any claim Plaintiff has for the enforcement of the provisions of the postnuptial to compel her father to turn over the family silverware.

As for Plaintiff's remaining claims sounding in tort, the Court is satisfied that it has subject-matter jurisdiction over the claims.  Plaintiff alleges that her father acted in bad faith and slandered her. Plaintiff seeks an award of compensatory damages for emotional distress caused by Defendant.  Although much of the conduct Plaintiff complains of occurred during the course of her parents' divorce case, the Court finds that none of the remedies sought for these torts involve the breach of the postnuptial agreement or the specific performance of the agreement.  The Court will proceed to consider the merits of Plaintiff's tort claims for bad faith and slander.

## STANDARD OF REVIEW

---

[4] Plaintiff's allegation that she was to receive the silverware on her 36th birthday conflict with the terms of the written agreement.  *See Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 536 (6th Cir. 2017) ("[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.").  Plaintiff has made the postnuptial an exhibit to her objections (ECF No. 8-1).  The postnuptial actually states that Plaintiff was to receive the silver on her 35th birthday, not her 36th, and from her mother, not her father.  *See* Postnuptial ¶ 10 (ECF No. 8-1).  The agreement conditioned the gift on Plaintiff's agreement not to sell the silverware and to pass down the set as a "family heirloom."  *Id*.

The Pro Se Complaint also refers to a previous lawsuit filed by Plaintiff against her father in the United States District Court for the Middle District of Tennessee.  Pro Se Compl. 2.  In a pleading filed in that case on March 9, 2020, Plaintiff alleged that she was to receive her grandmother's silver on her 35th birthday, April 20, 2019.  Compl. 2 (ECF No. 1), *Bass v. Bass*, no. 3:20-cv-000203 (M.D. Tenn. Mar. 9, 2020).  The Court may take "judicial notice at the pleading stage of certain public documents, including filings in other courts of record and publicly filed disclosure documents." *Chamberlain v. Reddy Ice Holdings, Inc.*, 757 F. Supp. 2d 683, 698 (E.D. Mich. 2010) (citing *Lyons v. Stovall,* 188 F.3d 327, 332 n. 3 (6th Cir. 1999)). The Court notes these inconsistencies for the record.  Nevertheless, because the Court concludes the domestic relations exception applies, the Court need not consider the contradiction about the terms of the postnuptial and the allegations in the Pro Se Complaint further.

Congress enacted 28 U.S.C. § 636 to relieve the burden on the federal judiciary by permitting the assignment of district court duties to magistrate judges. *See United States v. Curtis*, 237 F.3d 598, 602 (6th Cir. 2001) (citing *Gomez v. United States*, 490 U.S. 858, 869-70 (1989)); *see also Baker v. Peterson*, 67 F. App'x 308, 310 (6th Cir. 2003). The United States District Court for the Western District of Tennessee adopted Administrative Order 2013-05 for this very purpose, referring all cases filed by non-prisoner plaintiffs to a United States Magistrate Judge for management of all pretrial matters. The Magistrate Judge has recommended that the Court dismiss Plaintiff's case for failure to state a claim for relief pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Section 1915 governs all civil actions where a court has granted a plaintiff leave to proceed *in forma pauperis*, and § 1915(e)(2)(B)(ii) requires the court to dismiss any such case where "the action fails to state a claim on which relief can be granted." § 1915(e)(2)(B)(ii). The standard of review is just the same as if a defendant had filed a Rule 12(b)(6) motion to dismiss the case. *Small v. Brock*, 963 F.3d 539, 540–41 (6th Cir. 2020) (citing *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the "dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim under [§ 1915(e)(2)(B)(ii)]")).

Under that standard the Court must treat all of the well–pleaded allegations of the pleadings as true and construe all of the allegations in the light most favorable to the pleading party. *Elec. Merchant Sys. LLC v. Gaal*, 58 F.4th 877, 882 (6th Cir. 2023) (citing *Taylor v. City of Saginaw*, 922 F.3d 328, 331 (6th Cir. 2019)). However, legal conclusions or unwarranted factual inferences need not be accepted as true. *Fisher v. Perron*, 30 F.4th 289, 294 (6th Cir. 2022) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "(1) a short and plain jurisdictional statement, (2) a short and plain statement of the claim, and (3) an explanation of the relief sought."

7

Fed. R. Civ. P. 8(a). "That's it. By listing these elements, Rule 8 implicitly 'excludes other requirements that must be satisfied for a complaint to state a claim for relief.'" *Gallivan v. United States*, 943 F.3d 291, 293 (6th Cir. 2019) (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 10, at 107 (2012) (other citation omitted). Rule 8's notice pleading standard does not require "detailed factual allegations." *Iqbal*, 556 U.S. at 681.

However, Rule 8 does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* "Although the rule encourages brevity," a plaintiff must nevertheless "say enough to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) (citing *Dura Pharm. v. Broudo*, 544 U.S. 336, 346, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)). "Rule 8 does not empower [a plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Iqbal*, 556 U.S. at 687. In order to state a claim for relief, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This means, a complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Smith v. Gen. Motors LLC*, 988 F.3d 873, 877 (6th Cir. 2021) (citing *Boland v. Holder*, 682 F.3d 531, 534 (6th Cir. 2012)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Ryan v. Blackwell*, 979 F.3d 519, 524 (6th Cir. 2020) ("A complaint must contain enough 'factual matter' to raise a 'plausible' inference of wrongdoing.") (quotation omitted).

"Pro se complaints are to be held to 'less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). Pro se litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading." (internal quotation marks omitted)); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to pro se litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of pro se litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

Plaintiff has filed timely objections to the Magistrate Judge's report and recommendation. While "a district judge must determine de novo any part of a Magistrate Judge's disposition that has been properly objected to," Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C), the district court is not required to review (under a de novo or any other standard) "any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). The district court should adopt the findings and rulings of the Magistrate Judge to which no specific objection is filed. *Id.* at 151.

**CHOICE OF LAW**

As in any case where the Court exercises jurisdiction under section 1332, the Court applies the law of the forum state, including the forum's choice-of-law rules. *Loreto v. Procter & Gamble Co.*, 515 F. App'x 576, 578 (6th Cir. 2013) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). The report and recommendation applied Tennessee law to Plaintiff's claims, and Plaintiff has not objected to the analytical approach taken by the Magistrate Judge. Under Tennessee choice-of-law rules, the Court agrees that the substantive law of Tennessee governs Plaintiff's claims.

The labels given by Plaintiff to her claims sound in tort. In tort cases, "Tennessee follows the 'most significant relationship' approach of the Restatement (Second) of Conflict of Laws to choice-of-law questions." *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009) (citing *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992)). In the normal course, "the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation." *Id*. (quoting *Hataway*, 830 S.W.2d at 59). The Pro Se Complaint would hold Defendant liable for tortious conduct like defamation and conversion (which Plaintiff has dubbed "theft"). It is not entirely clear from the pleadings, however, where Plaintiff's injuries occurred. Plaintiff alleges that her parent's divorce proceedings took place in Arkansas and involved the disposition of real property in Arkansas and Tennessee. Wherever the disputed property may be located, the Pro Se Complaint alleges that Plaintiff is a citizen of the State of Tennessee. This reasonably suggests that any financial, reputational, or emotional harm suffered by Plaintiff occurred in Tennessee. The Court concludes, at least for purposes of deciding Plaintiff's objections to the report and recommendation, that Tennessee law should apply to Plaintiff's tort claims.

As part of its application of Tennessee law, the Court must follow "a ruling from the state supreme court." *Smith*, 988 F.3d at 878 (citing *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 937 (6th Cir. 2014)). Without a clear ruling from the Tennessee Supreme Court, the *Erie* doctrine requires this Court to "predict[] how the state supreme court would rule by looking to all available data, including decisions of the states' appellate courts." *Smith*, 988 F.3d at 878 (internal citation omitted); *see also Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 358 (6th Cir. 2018) (citing Tenn. Sup. Ct. R. 4(G)(2) for the proposition that a published opinion of the Tennessee Court of Appeals is "controlling authority for all purposes unless and until such opinion is reversed or modified by a court of competent jurisdiction").

## ANALYSIS

Based on its *de novo* review of the Pro Se Complaint, Plaintiff's objections to the report and recommendation, and the entire record of the proceedings, the Court **ADOPTS** the Magistrate Judge's recommendation and holds that the Pro Se Complaint fails to state a plausible claim for relief.

First, Plaintiff has failed to state any claim for a tort of bad faith. Plaintiff has cited no authority, and the Court is aware of none, standing for the proposition that Tennessee law recognizes a general tort of bad faith. By statute, Tennessee law permits an insured to seek an additional penalty for an insurer's bad faith denial of an insurance claim. *See* Tenn. Code Ann. § 56–7–105 (creating a statutory 25 percent penalty against an insurance company where the insurer's refusal to pay an insurance claim within 60 days is not in good faith); *Gaston v. Tenn. Farmers Mut. Ins. Co.*, 120 S.W.3d 815, 822 (Tenn. 2003). Even so, "Tennessee does not recognize a general common law tort for bad faith by an insurer against an insured; the exclusive

11

remedy for such conduct is statutory . . . ." *Cracker Barrel Old Country Store, Inc. v. Cincinnati Ins. Co.*, 590 F. Supp. 2d 970, 972 (M.D. Tenn. 2008), overruled on other *grounds by Heil Co. v. Evanston Ins. Co.*, 690 F.3d 722 (6th Cir. 2012). Beyond the insurance context, there is simply no independent cause of action sounding in tort for a party's bad faith conduct. Therefore, Plaintiff's claim for bad faith is dismissed for failure to state a claim.[5]

The same allegations that describe Defendant's bad faith also refer to the doctrine of unclean hands. Plaintiff alleges "the legal doctrine of unclean hands comes into play . . . because the defendant [Benton Bass] has dirty hands." Pro Se Compl. 8. Insofar as Plaintiff alleges Defendant's unclean hands as some additional grounds for relief, Plaintiff has failed to state such a claim. "The doctrine of unclean hands is a maxim of equity that allows a court to decline to grant relief to parties who have willfully engaged in unconscionable, inequitable, immoral, or illegal acts with regard to the subject matter of their claims." *Fuller v. Community Nat'l Bank*, --- S.W.3d ---, 2020 WL 1485696, at *4 (Tenn. Ct. App. 2020) (quoting *In re Estate of Boote*, 265 S.W.3d 402, 417 (Tenn. Ct. App. 2007)). Not only is the concept not a standalone cause of action, unclean hands is "an affirmative defense that must be proven by the defendant." *Tenn. St. Bank v. Mashek*, 616 S.W.3d 777, 813 (Tenn. Ct. App. 2020) (citing *Estate of Boote*, 265 S.W.3d at 418). Plaintiff has not shown then how the doctrine of unclean hands, an affirmative defense that can be raised by a responding party, supports any claim Plaintiff might have against her father.

As for Plaintiff's claim for slander or defamation, to prove defamation under Tennessee law, the plaintiff must show (1) a party published a statement; (2) with knowledge that the statement is false and defaming to the other; or (3) with reckless disregard for the truth of the

---

[5] Arkansas law would dictate the same result. *Findley v. Time Ins. Co.*, 573 S.W.2d 908 (Ark. 1978) (recognizing a tort of bad faith rooted in the implied contractual duty of duty of good faith and fair dealing and limited to claims by an insured against its insurer.

12

statement or with negligence in failing to ascertain the truth of the statement. *Sullivan v. Baptist Memorial Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999) (citing Restatement (Second) of Torts § 580 B (1977)). In order for a statement to be defamatory, the statement cannot merely be "annoying, offensive or embarrassing." *McWhorter v. Barre*, 132 S.W.3d 354, 364 (Tenn. Ct. App. 2003). The statement "must constitute a serious threat to the plaintiff's reputation" and "reasonably be construable as holding the plaintiff up to public hatred, contempt or ridicule." *Id*. (citing W. Prosser, *Law of Torts,* § 111, p. 739 (4th Ed. 1971)).

The Magistrate Judge has recommended the dismissal of the claim for failure to allege any reputational harm suffered by Plaintiff as a result of the alleged slander. The Magistrate Judge concluded that Plaintiff had not alleged "actual damages to her character or reputation" or that the allegedly defamatory statement "did in fact lead a court or another person to make such an assumption" about Plaintiff's character. Rep. & Recommendation 9 (ECF No. 7). The Court tends to agree with the Magistrate Judge that Plaintiff has not alleged how her father's comment about Plaintiff being "a work in progress" was defamatory. Plaintiff alleges without any supporting factual detail that a court or another person would conclude from the remark that Plaintiff had bad character. Plaintiff did allege that the statement caused her to suffer severe mental anguish. But beyond that label, Plaintiff has not actually alleged how the statement constitutes "a serious threat to the plaintiff's reputation."

Even assuming Plaintiff has alleged each of the essential elements of a slander claim, the Magistrate Judge concluded that the claim is time barred. The tort of slander has a six-month statute of limitations under Tennessee law. According to the Pro Se Complaint, Defendant made the allegedly defamatory statement as part of the divorce proceedings between Plaintiff's parents. Plaintiff's mother filed for divorce in 2007, and according to Plaintiff, the case spanned 15 years.

13

Pro Se Compl. 13 ("I have been recovering from this 15-year divorce case caused by the Bad Faith of my Defendant Father Benton Bass."). The Magistrate Judge reasoned that Defendant must have made the statement far outside of the six-month statute of limitations because the divorce commenced in 2007 and continued for a number of years just at the trial level.

     A lawsuit for slander has a very short statute of limitations in Tennessee and must "be commenced within six (6) months after the words are uttered." *Quality Auto Parts Co., Inc. v. Bluff City Buick Co., Inc.*, 876 S.W.2d 818, 821 (Tenn. 1994) (quoting Tenn. Code Ann. § 28–3–103). The Pro Se Complaint does not allege an exact date for the deposition in which Defendant allegedly made his defamatory comment about Plaintiff. Plaintiff does allege that her mother filed for divorce in December 2007 and that the trial court in Arkansas issued the divorce decree in January 2014. This would reasonably date Defendant's defamatory statement, at the very latest, to early 2014, years before Plaintiff filed suit. Even viewing the allegations in a light most favorable to Plaintiff, her claim for slander comes far outside of the statute of limitations.

     Plaintiff states in her objections that "[f]iling my claim after the defendants [sic] deposition would have been pointless because the motions and arguments filed by the plaintiffs [sic] attorney had not been decided or put in the record as to the enforcement of the postnuptial contract." This is not the law in Tennessee. The limitations period for a claim of slander begins to run as soon as the statement is spoken or "uttered." Tenn. Code Ann. § 28–3–103. "A cause of action generally accrues when the tort is complete and injury to the plaintiff has occurred." *Hunter v. Brown*, 955 S.W.2d 49, 51 (Tenn. 1997). Plaintiff's objection does not show why the Court should deviate from this well-established rule or toll the running of the limitations period. Therefore, Plaintiff's claim for the tort of slander is dismissed for failure to state a claim.

     Plaintiff's objections to the report and recommendation are largely addressed to the statute

of limitations for all claims she might have against her father. Plaintiff argues that she could not have brought suit for breach of the postnuptial or specific performance of the postnuptial until the Arkansas courts had issued a final judgment on her parents' divorce decree. One of the issues in the divorce case was the validity of the postnuptial. The Arkansas Court of Appeals issued its decision affirming the trial court on September 13, 2023. Plaintiff contends that none of her claims accrued until the date on which the divorce proceedings became final. In her objections to the Magistrate Judge's report and recommendation, Plaintiff now argues that she has claims sounding in contract and that the claims likewise did not accrue until 2023. In fact, Plaintiff's objections repeatedly refer to a breach of the postnuptial agreement and argue the timeliness of her contractual claims in light of the final judgment in the Arkansas divorce proceedings. Plaintiff also mentions other claims sounding in contract like promissory estoppel. Pl.'s Objs. 4, Feb. 7, 2024 (ECF No. 8).

In Tennessee, "a breach-of-contract cause of action accrues as of the date of the breach." *Individual Healthcare Specialists*, 566 S.W.3d at 709; *State of Use of Cardin v. McClellan*, 85 S.W. 267, 269 (Tenn. 1905) ("[T]he cause of action . . . for the breach of a contract . . . accrues immediately upon the happening of . . . the breach, even though the actual damage resulting therefrom may not occur until some time afterwards."). The problem is Plaintiff's Pro Se Complaint does not allege a claim for breach of contract or specific performance. On the contrary, Plaintiff denied that she was alleging such claims. Pro Se Compl. 5 ("It should be noted this is not a suite [sic] for specific performance or breach of contract."). As such, the Court does not consider them in deciding what plausible claims are stated in the Pro Se Complaint.

To the extent that Plaintiff's objections seek leave to amend and add new claims sounding in contract, the Court holds that such an amendment would be futile. All of the purported breaches

15

of contract relate to promises allegedly made by Defendant in the postnuptial agreement. Plaintiff's contract claims and any other claim sounding in contract would all implicate the domestic relations exception to the Court's subject-matter jurisdiction. For reasons the Court has already discussed, any claim based on a breach of the postnuptial would seek as a remedy the enforcement of the agreement, bringing such claims within the scope of the domestic relations exception. Any obligation owed by Defendant to Plaintiff by virtue of the postnuptial is not "imposed by the law of contract or torts . . . but are those imposed by the divorce decree" and would involve a "a declaration of rights and obligations arising from marital status." *McLaughlin*, 193 F.3d at 413. The Court concludes then that it would lack subject-matter jurisdiction over any additional claim Plaintiff may seek to add to her case through an amended pleading for breach of the postnuptial agreement. Therefore, the Court holds that granting Plaintiff leave to amend any such claim would be futile.

Based on its de novo review of the Magistrate Judge's report and recommendation and Plaintiff's timely objections, the Court **ADOPTS** the Magistrate Judge's report and recommendation and **DISMISSES** with prejudice Plaintiff's claims for bad faith and slander for failure to state a claim. The Court **DISMISSES** without prejudice Plaintiff's claims for the disposition of any real or personal property for lack of subject-matter jurisdiction under the domestic relations exception to § 1332 diversity jurisdiction. The Clerk of Court is directed to enter judgment.

The next issue to be addressed is whether the Court should authorize Plaintiff to appeal this decision *in forma pauperis*. Under 28 U.S.C. § 1915(a)(3), an appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith. "'Good faith' has been defined as a requirement that an appeal present a nonfrivolous question for review." *Cruz v.*

*Hauck*, 404 U.S. 59, 62 (1971) (Douglas, J., concurring).  The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  The same considerations that lead the Court to dismiss this case, lack of subject-matter jurisdiction and Plaintiff's failure to state a plausible claim for relief, also compel the conclusion that an appeal would not be taken in good faith.  It is therefore **CERTIFIED**, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith and Plaintiff may not proceed on appeal *in forma pauperis*.

The United States Court of Appeals for the Sixth Circuit's decisions in *McGore v. Wrigglesworth*, 114 F.3d 601, 612–13 (6th Cir. 1997) and *Floyd v. United States Postal Serv.*, 105 F.3d 274, 276 (6th Cir. 1997) apply to any appeal filed by Plaintiff in this case.  If Plaintiff files a notice of appeal, she must pay the entire $605 filing fee required by 28 U.S.C. §§ 1913 and 1917.  By filing a notice of appeal, Plaintiff becomes liable for the full amount of the filing fee, regardless of the subsequent progress of the appeal.  The entire filing fee must be paid within thirty (30) days of the filing of the notice of appeal.  If Plaintiff fails to comply with the above assessment of the appellate filing fee within thirty (30) days[6] of the filing of the notice of appeal or the entry of this order, whichever occurred later, the Court will notify the Sixth Circuit, which will dismiss the appeal. If the appeal is dismissed, it will not be reinstated once the fee is paid. *McGore*, 114 F.3d at 610.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:  April 30, 2024.

---

[6] The district court may extend this deadline one time by thirty (30) days if the motion to extend is filed before the expiration of the original deadline. *McGore*, 114 F.3d at 610.